No. 2025-106

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

In Re KOEHLER OBERKIRCH GMBH, fka Papierfabrik August Koehler SE, fka Papierfabrik August Koehler AG, KOEHLER PAPER SE,

Petitioners.

On Petition for Writ of Mandamus to the United States
Court of International Trade in No. 1:24-cv-00014, Judge Gary S. Katzmann

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

*Of Counsel:*

BRANDON T. ROGERS
  *Senior Attorney*
  *U.S. Customs and Border Protection*
  *Office of the Assistant Chief Counsel*
  *Indianapolis, IN*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

PATRICA M. McCARTHY
  *Director*

JUSTIN R. MILLER
  *Attorney-in-Charge*
  *International Trade Field Office*

EDWARD F. KENNY
  *Senior Trial Counsel*

LUKE MATHERS
  *Trial Attorney*
  *Commercial Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *26 Federal Plaza, Room 346*
  *New York, NY 10278*
  *(212) 264-9236*

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUE.................................................................................1

STATEMENT OF THE CASE..................................................................................2

I. Koehler Dumps Thermal Paper on the U.S. Market, Conceals Information from the U.S. Department of Commerce Through a Transshipment Scheme, Refuses to Pay its Bills, then Spins Off its Substantial Assets ....................................................................................................2

II. The Government's Requests for Service of Process Through the Hague Convention are Denied.......................................................................................3

III. The Trial Court Orders Alternative Service of Process on Koehler Through Its U.S. Counsel.................................................................................4

SUMMARY OF ARGUMENT..................................................................................6

ARGUMENT..............................................................................................................7

I. Koehler's Right to Mandamus Relief is Neither Clear nor Indisputable..............7

    A. The Trial Court Did Not Clearly Abuse its Discretion in Agreeing with Nearly All Federal Courts that Alternative Service on a Foreign Defendant Through its U.S. Counsel is Permissible .....................7

    B. The Trial Court Did Not Clearly Abuse its Discretion in Ordering Alternative Service on Koehler Where The Government's Requests for Hague Convention Service were Denied...............................8

II. Appeal from a Final Order is not Inadequate....................................................... 10

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

*AngioDynamics, Inc. v. Biolitec AG*,
  780 F.3d 420 (1st Cir. 2015) ................................................................................................. 7

*Bankers Life & Cas. Co. v. Holland*,
  346 U.S. 379 (1953) ............................................................................................................ 11

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ....................................................................................................... 7, 10

*Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
  970 F.3d 1269 (10th Cir. 2020) .......................................................................................... 7

*Freedom Watch, Inc. v. OPEC*,
  766 F.3d 74 (D.C. Cir. 2014) ........................................................................................... 7, 8

*In re Aputure Imaging Indus. Co., Ltd.*,
  No. 2024-103, 2024 WL 302404 (Fed. Cir. Jan. 26, 2024) ............................................... 9

*In re BNY ConvergEx Grp., LLC*,
  404 F. App'x 484 (Fed. Cir. 2010) .................................................................................... 10

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) .......................................................................................... 11

*In re OnePlus Tech. (Shenzhen) Co.*,
  No. 2021-165, 2021 WL 4130643 (Fed. Cir. Sept. 10, 2021) ...................................... 8, 9

*In re Realtek Semiconductor Corp.*,
  No. 2023-132, 2023 WL 5274627 (Fed. Cir. Aug. 16, 2023) ............................... 7, 9, 10

*In re Roche Molecular Sys., Inc.*,
  516 F.3d 1003 (Fed. Cir. 2008) .......................................................................................... 10

*Marks Law Offices, LLC v. Mireskandari*,
  704 F. App'x 171 (3d Cir. 2017) ......................................................................................... 7

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ....................................................................................... 7, 9

*Papierfabrik August Koehler SE v. United States*,
  710 F. App'x 889 (Fed. Cir. 2018) ...................................................................................3

*Papierfabrik August Koehler SE v. United States*,
  843 F.3d 1373 (Fed. Cir. 2016) ........................................................................................3

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ..........................................................................................7

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
  672 F.3d 1041 (Fed. Cir. 2012) ........................................................................................2

**Statutes**

28 U.S.C. § 1292(d) ...............................................................................................................5

28 U.S.C. § 1582(3) ...............................................................................................................3

28 U.S.C. § 1651(a) ...............................................................................................................1

**Rules**

CIT Rule 4(e) ................................................................................................................*passim*

CIT Rule 4(e)(1) ....................................................................................................................4

CIT Rule 4(e)(2)(B) ...............................................................................................................4

CIT Rule 4(e)(3) ........................................................................................................4, 5, 8, 9

CIT Rule 4(g)(2) ....................................................................................................................4

Fed. R. Civ. P. 4(f) .........................................................................................................4, 5, 7

Fed. R. Civ. P. 4(f)(2) ............................................................................................................9

Fed. R. Civ. P. 4(f)(3) .......................................................................................................6, 9

**Treaties**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil
  and Commercial Matters, *done* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ........4

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

# INTRODUCTION

Koehler Oberkirch GmbH accumulated nearly $200 million in antidumping duty bills when importing its own thermal paper. Rather than pay, it attempted to evade liability by diverting its substantial assets to Koehler Paper SE, a new company that it created. The government brought suit against both companies (collectively, "Koehler") in the United States Court of International Trade to collect.

Koehler, located in Germany, now petitions for mandamus relief from the trial court's order permitting the government to serve Koehler—which refused to waive service and could not be served through the Hague Convention—through its U.S. counsel. But Koehler's right to mandamus relief is not clear and indisputable. In fact, the majority of courts to have addressed arguments like Koehler's, including this Court, has rejected them. Further, an appeal from a final order would not be inadequate.

Accordingly, the Court should deny Koehler's petition.

# STATEMENT OF JURISDICTION

This Court has the authority to consider petitions for writs of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a).

# STATEMENT OF THE ISSUE

The issue in this case is whether Koehler is entitled to the extraordinary relief of mandamus to set aside the trial court's order permitting the government to serve process on Koehler through its U.S. counsel.

## STATEMENT OF THE CASE

**I.  Koehler Dumps Thermal Paper on the U.S. Market, Conceals Information from the U.S. Department of Commerce Through a Transshipment Scheme, Refuses to Pay its Bills, then Spins Off its Substantial Assets**

Koehler is a German manufacturer of thermal paper—the type of paper that receipts are printed on—that, for a time, served as the non-resident importer of record of its own products into the United States. Appx28-29. Entries of Koehler's thermal paper were subject to an antidumping duty order. Appx29.

"Dumping occurs when a foreign company sells a product in the United States at a lower price than what it sells that same product for in its home market." *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1046 (Fed. Cir. 2012). Foreign companies can undercut domestic ones (and, in turn, capture market share) by dumping goods in the United States. *Id.* Congress empowered the U.S. Department of Commerce to offset dumping by imposing antidumping duties on underpriced imported goods. *Id.* at 1046–47. Determining the price of an imported good in the foreign company's home market is therefore essential to calculating an antidumping duty rate.

But Koehler hid the true price of its thermal paper in its home market from Commerce during the antidumping proceedings. It admittedly engaged in a transshipment scheme through which it intentionally concealed reportable home market sales transactions. Appx30. As a result, during its reviews of the antidumping

duty order, applying adverse facts available as permitted by applicable law, Commerce increased Koehler's antidumping duty rate to 75.36 percent *ad valorem*. Appx30. This Court upheld that rate—twice. *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016), *cert. denied*, 138 S. Ct. 555 (2017); *Papierfabrik August Koehler SE v. United States*, 710 F. App'x 889 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1290 (2019).

Koehler never paid the resulting bills, which represented the difference in the estimated duties that Koehler deposited at entry and the substantially higher final duty amount owed. Appx35, 39-73. Instead, just after its antidumping duty liability became final and conclusive by law, Koehler understated its antidumping duty debt on its corporate financial statements and siphoned away most of its assets—but few of its liabilities—to a newly created company with the same address and corporate management. Appx32-34. The government accordingly sued Koehler in the trial court to collect the nearly $200 million in outstanding antidumping duties, the payment of which was meant to provide a remedy over a decade ago for the injury to the domestic industry from Koehler's dumping. *See* 28 U.S.C. § 1582(3).

II. **The Government's Requests for Service of Process Through the Hague Convention are Denied**

Koehler declined to waive service of process. *See* Appx108-110. So the government submitted service requests to the district court of Freiburg, Germany, pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (Hague Convention), *done* Nov. 15,

1965, 20 U.S.T. 361, 658 U.N.T.S. 163. *See* Appx101, 104. The German court "denied" these requests because, under German law, the government's suit to recover antidumping duties "concerns claims under public law and is not a civil or commercial matter" to which the Hague Convention is "applicable." Appx101, 104. The German court "request[ed] that a request" for service be made "through diplomatic channels" instead. *Id.* (bolding omitted).

### III. The Trial Court Orders Alternative Service of Process on Koehler Through Its U.S. Counsel

The government then moved for alternative service on Koehler through its U.S. counsel, pursuant to the trial court's Rule 4(e)(3). Appx75-90.

The trial court's rules "are styled, numbered and arranged to the maximum extent practicable in conformity with the Federal Rules of Civil Procedure[]." Preface, CIT Rules. CIT Rule 4(e) is identical to Fed. R. Civ. P. 4(f). It provides that process may be served on a corporate entity "at a place not within any judicial district of the United States" (that is, abroad) by one of a number of methods. *See* CIT Rule 4(e) and (g)(2). First, process may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention …." CIT Rule 4(e)(1). Second, if an internationally agreed means is inapplicable, process may be served "as the foreign authority directs in response to a … letter of request," among other options. CIT Rule 4(e)(2)(B). And third, process

may also be served "by other means not prohibited by international agreement, as the court orders." CIT Rule 4(e)(3).

The trial court granted the government's motion for alternative service. It rejected Koehler's arguments that the language of CIT Rule 4(e) prohibited alternative service through a foreign defendant's U.S. counsel and that such service would impair international comity. *See* Appx1-22. As for the language of CIT Rule 4(e), the trial court concluded that service on a defendant located abroad through its U.S. counsel constitutes service "at a place not within any judicial district of the United States," as the rule requires—just as this Court, its sibling circuits, and nearly all trial courts have concluded as to the identical Fed. R. Civ. P. 4(f). Appx10-13; *see* Appx140, 147-153. And as for international comity, the trial court explained that Koehler failed to "establish a German sovereign interest to which comity might conceivably be owed." Appx14. After confirming that any due-process concerns were satisfied, Appx17-20, the trial court ordered that Koehler be served through its U.S. counsel, Appx22, and the government so served Koehler, *see* Appx26.

Koehler then moved the trial court to certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(d). The trial court denied that motion. Appx218-226. Having failed to obtain appellate review through ordinary means, Koehler now petitions this Court for a writ of mandamus.

## SUMMARY OF ARGUMENT

Whether CIT Rule 4(e) "permits service upon a foreign defendant through its U.S. counsel" is hardly an "undecided question in this Circuit," as Koehler claims. Pet. at 2. Panels of this Court have routinely denied petitions for writs of mandamus seeking vacatur of orders entered under Fed. R. Civ. P. 4(f)(3) that are materially indistinguishable from the trial court's order. And for good reason: nearly all courts—including this one—agree that alternative service on a foreign defendant through its U.S. counsel is permissible. Koehler also has not established that the trial court so clearly abused its discretion in ordering such service in this case that extraordinary relief could be warranted. Alternative service was justified given the government's unsuccessful attempts at Hague Convention service. Koehler's right to mandamus relief is thus neither clear nor indisputable, as it must be in order to be granted.

Additionally, Koehler is capable of having its claims reviewed and heard through an appeal from a final order. Ordinary appellate review is not inadequate simply because Koehler must litigate this case to judgment first.

For all these reasons, the Court should deny Koehler's petition.

# ARGUMENT

## I. Koehler's Right to Mandamus Relief is Neither Clear nor Indisputable

A petitioner is not entitled to the "'extraordinary remedy' of a writ of mandamus" unless it can "show that the 'right to issuance of the writ is clear and indisputable,'" among other conditions. *In re Realtek Semiconductor Corp.*, No. 2023-132, 2023 WL 5274627, at *1 (Fed. Cir. Aug. 16, 2023) (per curiam) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004)). Koehler fails to make that showing.

### A. The Trial Court Did Not Clearly Abuse its Discretion in Agreeing with Nearly All Federal Courts that Alternative Service on a Foreign Defendant Through its U.S. Counsel is Permissible

To start, Koehler's reading of CIT Rule 4(e), Pet. at 9–12, is simply wrong. As nearly all courts agree, the identical Fed. R. Civ. P. 4(f) permits district courts to order service of process on a foreign defendant through its U.S. counsel, just as the trial court did here. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239–40 (Fed. Cir. 2010); *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1295 (10th Cir. 2020); *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x 171, 177 (3d Cir. 2017); *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015); *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 83 (D.C. Cir. 2014); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–19 (9th Cir. 2002); *see* Appx147-153 (collecting trial court decisions). Such service occurs "at a place not within any judicial district of the United States," as the rule requires, because U.S.

counsel is just the messenger. Appx12 (citing *Freedom Watch*, 766 F.3d at 84 ("[W]hen a court orders service on a foreign entity through its counsel in the United States, the attorney functions as a mechanism to transmit the service to its intended recipient abroad.")).

But even if Koehler's reading of CIT Rule 4(e) had merit (which it does not), its reliance on just three district court decisions, without attempting to distinguish or even acknowledging any adverse cases, Pet. at 10–13, confirms that it has no clear or indisputable right to mandamus relief. The trial court cannot have clearly abused its discretion by adopting the near-unanimous view of the provision at issue over the minority view. *In re OnePlus Tech. (Shenzhen) Co.*, No. 2021-165, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021) (per curiam). Nor does Koehler point to any international agreement or concerns of due process or comity that the trial court overlooked. *See* CIT Rule 4(e)(3); *see generally* Pet. In short, Koehler offers little to suggest that the trial court got it wrong—much less clearly and indisputably so.

> **B.** **The Trial Court Did Not Clearly Abuse its Discretion in Ordering Alternative Service on Koehler Where The Government's Requests for Hague Convention Service were Denied**

Koehler's alternative claim—that there is "no basis in the record" for the trial court's order, Pet. at 13–16—is similarly no more than a complaint about how the trial court exercised its discretion rather than a demonstration of clear and indisputable right to relief. Specifically, Koehler suggests that more was necessary to

obtain the grant of alternative service—more than the inability to obtain waivers of service, Appx108-110, the denied requests for service under the Hague Convention, Appx101, 104, and potential delay of "a year or more" in completing service through diplomatic channels, Appx134.

But the government's attempts at service and the significant delay that Koehler's preferred means of service would cause were sufficient justifications for the trial court's order on ordinary appellate review, *see Nuance Commc'ns*, 626 F.3d at 1237–40, let alone on a petition for a writ of mandamus. That is because trial courts "are generally accorded broad discretion in determining whether to allow alternative means of service." *In re Aputure Imaging Indus. Co., Ltd.*, No. 2024-103, 2024 WL 302404, at *2 (Fed. Cir. Jan. 26, 2024) (per curiam); *Realtek*, 2023 WL 5274627, at *2; *OnePlus*, 2021 WL 4130643, at *4. Thus, in *OnePlus*, mandamus relief from a Fed. R. Civ. P. 4(f)(3) order was denied even though the plaintiff did not bother to first attempt Hague Convention service. 2021 WL 4130643, at *3–*4. Mandamus relief from Fed. R. Civ. P. 4(f)(3) orders was also denied in *Realtek* and *Aputure Imaging*, where the plaintiffs did not first attempt service pursuant to the petitioners' preferred means under Fed. R. Civ. P. 4(f)(2). *Realtek*, 2023 WL 5274627, at *2; *Aputure Imaging*, 2024 WL 302404, at *2. If the *OnePlus*, *Realtek*, and *Aputure Imaging* petitioners were not clearly and indisputably entitled to relief, then neither is Koehler, which also wrongly exalts its preferred means of service over the equally available CIT Rule 4(e)(3). *See Realtek*, 2023 WL 5274627, at *2 (quoting *Nuance Commc'ns*, 626 F.3d at 1239).

9

Because Koehler has failed to demonstrate a clear and indisputable right to a writ of mandamus, the Court should deny its petition.

## II. Appeal from a Final Order is not Inadequate

In addition to failing to demonstrate a right to relief on the merits, Koehler also fails to demonstrate that appeal from a final order would be inadequate. A petitioner seeking the extraordinary remedy of mandamus must also show that it has "no other adequate means to attain the relief [it] desires." *Realtek*, 2023 WL 5274627, at *1 (quoting *Cheney*, 542 U.S. at 380–81). But "a party seeking to vindicate its right not to be forced to appear before a court at all must ordinarily wait until after a final decision in order to seek appellate review." *Id.* (citing *In re Roche Molecular Sys., Inc.*, 516 F.3d 1003, 1004 (Fed. Cir. 2008) (per curiam)). That is Koehler's situation.

Koehler argues that the normal process is inadequate because of the "risk" that the parties would incur "significant expense through discovery, motions practice, and trial," Pet. at 17, but that risk presumably is present in every case brought before this Court on a petition for a writ of mandamus. "To grant mandamus simply because a party asserts it will be forced to expend unnecessary costs would make a large class of interlocutory orders routinely reviewable," "clearly undermin[ing] the extraordinary nature" of mandamus relief. *In re BNY ConvergEx Grp., LLC*, 404 F. App'x 484, 485 (Fed. Cir. 2010).

In any event, there is no basis for Koehler's fear. Indeed, as the trial court explained in denying Koehler's motion for interlocutory appeal, Koehler concedes

that if alternative service were improper, the government "would nevertheless eventually succeed in serving Koehler in some other way." Appx222. So, even if this Court were to reverse the trial court, Koehler will ultimately have to bear the expense of litigation. In addition, by Koehler's own admission, it does not "seek to relitigate the anti-dumping duties" that have become final and conclusive by law; rather, it has "raised issues … about [its] ability to pay, and the timing of payment[.]" Appx168. Litigating this case is therefore unlikely to result in the sort of "substantial expense" with which the patent-infringement case that Koehler cites was concerned, Pet. at 17 (citing *In re Google LLC*, 949 F.3d 1338, 1342–43 (Fed. Cir. 2020)).

Because Koehler fails to demonstrate that it would suffer hardship beyond ordinary litigation expense, its petition for extraordinary relief cannot serve as a substitute for post-judgment appeal. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953).

## CONCLUSION

For these reasons, Koehler's petition should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

PATRICA M. MCCARTHY
   *Director*

*Of Counsel:*

BRANDON T. ROGERS
   *Senior Attorney*
   *U.S. Customs and Border Protection*
   *Office of the Assistant Chief Counsel*
   *Indianapolis, IN*

/s/ Justin R. Miller
JUSTIN R. MILLER
   *Attorney-in-Charge*
   *International Trade Field Office*

/s/ Edward F. Kenny
EDWARD F. KENNY
   *Senior Trial Counsel*

/s/ Luke Mathers
LUKE MATHERS
   *Trial Attorney*
   *Commercial Litigation Branch*
   *Civil Division, U.S. Department of Justice*
   *26 Federal Plaza, Room 346*
   *New York, NY 10278*
   *(212) 264-9236*

November 6, 2024

# CERTIFICATE OF SERVICE

I certify that on November 6, 2024, pursuant to Federal Rule of Appellate Procedure 25(d) and Federal Circuit Rule 25(e)(5), I served the foregoing response via U.S. mail on

    John F. Wood
    Holland & Knight LLP
    800 17th Street, NW
    Suite 1100
    Washington, D.C. 20006
    (202) 955-3000
    John.F.Wood@hklaw.com

counsel of record for petitioners Koehler Oberkirch GmbH and Koehler Paper SE in the proceeding below.

                                          /s/ Luke Mathers
                                          Luke Mathers

# CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 21(d)(1) because it contains 2,626 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Luke Mathers
Luke Mathers
